UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

AMBER ANDRUS,

                                Plaintiff,                              Case # 14-CV-6667-FPG

v.                                                                         DECISION AND ORDER

CORNING, INC.,

                                Defendant.
_____

## INTRODUCTION

Plaintiff Amber Andrus ("Plaintiff") brings this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e)-(e)(17) ("Title VII") against her employer, Corning, Inc. ("Corning") alleging that she was subject to discrimination and retaliation based on her sex. ECF No. 1. Corning has moved for summary judgment, arguing that Plaintiff failed to establish a *prima facie* case for both her discrimination and retaliation causes of action under Title VII. ECF No. 18. For the following reasons, Corning's Motion for Summary Judgment is GRANTED, and this case is dismissed.

## BACKGROUND

The following facts are drawn largely from Plaintiff's deposition, and are also drawn from the undisputed affidavits and documentary evidence submitted in support of Corning's Motion for Summary Judgment. ECF No. 18-3. The facts are viewed in the light most favorable to Plaintiff, as the non-moving party on this Motion.

Plaintiff began her employment as a Mechanical Associate with Corning in March 2008. ECF No. 18-3 at 12. In September 2008, she transferred to Corning's Sullivan Park facility ("Sullivan Park") where she worked the night shift. *Id.* at 13. Plaintiff was a member of the

United Steel Workers Union. *Id.* Plaintiff's supervisor at Sullivan Park was, and still is, Julie Whitehouse. *Id.* at 36-37. Plaintiff worked the night shift at Sullivan Park for over two years. *Id.* at 13.

Plaintiff worked for Corning customers who were charged for the time she spent on maintenance projects. *Id.* at 15. Plaintiff was aware of customer complaints for spending too much time on some projects, but stated that most of her customers were satisfied with her work. *Id.* at 16. During her time on the night shift at Sullivan Park, Plaintiff received performance/work product related disciplinary warnings. On May 11, 2009, Plaintiff was issued a formal verbal warning for taking excessive time to complete assignments. *Id.* at 114. On June 29, 2010, Plaintiff was issued a formal written warning for failing to properly prioritize work assignments. *Id.* at 115. On October 20, 2010, Plaintiff was issued a three-day suspension for failing to accurately or efficiently perform three separate jobs. *Id.* at 116. On April 20, 2011, Plaintiff was issued a five-day suspension for inefficient and incompetent performance on the job. *Id.* at 117.

When Plaintiff received the three-day suspension on October 20, 2010, she denied any wrongdoing and instead attributed the suspension to the unspecified influence of another employee named Harold Drane. *Id.* at 33. Ms. Whitehouse, Plaintiff's supervisor who had issued Plaintiff's suspension, stated that Plaintiff "was unable to accept any of my criticisms of her work and, instead, protested that she believed one of her coworkers—Harold Drane—was behind the discipline." *Id.* at 107. Ms. Whitehouse stated to Plaintiff that the performance deficiencies resulting in the subject suspension "arose directly from a customer's complaint" and that "none of the information that lead to her discipline came from Mr. Drane." *Id.*

2

Like Plaintiff, United Steelworkers Union represented Mr. Drane. *Id.* at 46-47. Plaintiff testified that Mr. Drane did not have the power or authority to transfer, promote, discipline, or suspend employees. *Id.* at 48-50. With regard to Plaintiff's disciplinary warnings, Mr. Drane did not sign any of them; Mr. Drane did not attend any of Ms. Whitehouse's disciplinary meetings with Plaintiff; and Mr. Drane did not complete any of Plaintiff's performance reviews. *Id.* at 47-48.

After Plaintiff was issued the five-day suspension on April 20, 2011, she requested that she be transferred to the day shift, and Corning granted her request. *Id.* at 40. Plaintiff's full performance reviews from 2011-12 and 2012-13 were favorable. *Id.* at 42-44, 45-46.

Corning has a published Code of Conduct which prohibits discrimination and sexual harassment in the workplace and identifies several reporting avenues through which employees can make complaints, including an external complaint line administered by an independent third-party. *Id.* at 130-138. Plaintiff received a copy of the Code of Conduct and had formal training on its contents in February 2009. *Id.* at 19-21. Plaintiff testified that she paid attention during the training and understood the Code of Conduct's terms and provisions. *Id.*

On July 15, 2013, Plaintiff approached her supervisor, Ms. Whitehouse, and complained that Mr. Drane was acting inappropriately toward her. *Id.* at 66. Ms. Whitehouse suggested that Plaintiff file a Code of Conduct complaint. *Id.* at 108. Ms. Whitehouse dialed the hotline number for Plaintiff and handed her the phone to lodge her complaint. *Id.* at 69-73. Because Plaintiff did not feel she could prepare a written statement, she provided an oral statement and Ms. Whitehouse typed it for her. *Id.* at 67-69. Plaintiff attributed the following inappropriate comments to Mr. Drane:

3

      (i)      In April 2013, Mr. Drane told Plaintiff "you had better stick with me, I can make or break you."

      (ii)     In April 2013, Mr. Drane, told Plaintiff "I have $600 in my pocket right now, I bet I can make you squeal."

      (iii)    In April 2013, Mr. Drane told Plaintiff "I only need you Tuesdays and Thursdays."

      (iv)    In May 2013, Mr. Drane stared at Plaintiff's breasts and commented "I feel like having milk for some reason."

      (v)     Plaintiff testified that Mr. Drane would answer her phone calls by stating "Did you miss me?"

      (vi)    When Plaintiff worked on the night shift in 2010 or 2011, Mr. Drane referred to her as a "stupid cunt" on two or three instances.

*Id.* at 52-56.

On July 17, 2013, Plaintiff's Code of Conduct complaint was forwarded to Corning's Human Resources Manager responsible for Sullivan Park, Mr. Kevin Konopski. *Id.* at 109. Mr. Konopski interviewed Plaintiff with her Union representatives present on July 22, 2013. *Id.* Plaintiff provided Mr. Konopski with several witnesses who she thought might corroborate her claims about Mr. Drane, and Mr. Konopski subsequently interviewed 13 of those witnesses. *Id.* Mr. Konopski found that several of the witnesses corroborated some of Plaintiff's allegations and, in turn, he determined that Mr. Drane had used inappropriate language toward Plaintiff in the workplace. *Id.*

On July 31, 2013, Mr. Konopski met with Mr. Drane and his Union representatives and, after presenting the allegations against him and giving him an opportunity to respond, notified Mr. Drane that his employment was being terminated. *Id.* In lieu of immediate termination, the Union requested, and Corning agreed, that Mr. Drane would be placed on an unpaid leave of absence from July 31, 2013 through January 31, 2014, thus bridging him to a retirement date of

4

February 1, 2014. *Id.* At the conclusion of the July 31, 2013 meeting, Mr. Drane was required to turn in his facility keys and his employee badge, and security escorted him off the premises. *Id.* Mr. Drane's active employment was effectively terminated as of July 31, 2013. *Id.*

Shortly after Plaintiff filed her Code of Conduct Complaint and Mr. Konopski interviewed her, she began a medical leave of absence on July 25, 2013. *Id.* at 79. Plaintiff returned to work on October 7, 2013. *Id.* at 110. Soon after her return to work, Plaintiff became alarmed and called the Corning Security Department because she saw what she believed to be Mr. Drane's truck in the Sullivan Park parking lot. *Id.* at 80-81. Although no one – including Plaintiff – actually saw Mr. Drane at Sullivan Park after his employment was terminated, Plaintiff nonetheless feared that Mr. Drane was present on the premises and that he presented a threat to her personal safety. *Id.* at 83. In response to her professed fear of Mr. Drane's presence on the workplace premises, Corning offered to: 1) provide a Corning security officer to escort Plaintiff to and from her vehicle any time she felt fearful; 2) not assign Plaintiff any work outside the facility so she would feel more comfortable; and 3) provide a referral to Corning's Employee Assistance Program. *Id.* at 86. Plaintiff accepted only the referral to the Employee Assistance Program. *Id.* at 86-87.

Plaintiff began another medical leave of absence on October 23, 2013. *Id.* at 110. Plaintiff's employment has not been terminated and she remains a Corning employee. *Id.* at 9-11. The most recent information in the record indicates that Plaintiff currently remains on medical leave and has been collecting workers' compensation benefits. *Id.*

Plaintiff commenced this action Under Title VII on December 2, 2014, alleging that Corning maintained a hostile work environment and thus discriminated against her based on her sex, and that Corning retaliated against her as another form of discrimination based on sex. ECF

No. 1.  With discovery completed, Corning has moved for summary judgment on both causes of action.  ECF No. 18.  The Court received a response in opposition from Plaintiff (ECF No. 21) and a reply in support from Corning (ECF No. 22), and deems oral argument unnecessary.

## **DISCUSSION**

### I. **Summary Judgment Standard**

A party is entitled to summary judgment "if the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Celetox Corp. v. Cartreett*, 477 U.S. 317, 324 (1986) (internal quotation marks omitted).

When considering a motion for summary judgment, all genuinely disputed facts must be resolved in favor of the non-moving party. *Scott v. Harris*, 550 U.S. 372, 380 (2007).  To establish a material issue of fact, the non-movant must provide "sufficient evidence supporting the claimed factual dispute" such that a "jury or judge [is required] to resolve the parties' different versions of the truth at trial." *Anderson v. Liberty*, *Inc.*, 477 U.S. 242, 248-249 (1986) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968)).  Regarding materiality, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment," and "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving part." *Id.* at 248.

Accordingly, the Court's function in deciding a motion for summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a

genuine issue for trial." *Id.* at 249. When the moving party properly supports its motion for summary judgment, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 250. The Second Circuit has noted that

> in discrimination cases, the inquiry into whether the plaintiff's sex (or race, etc.) caused the conduct at issue often requires an assessment of individuals' motivations and state of mind, matters that call for a 'sparing' use of the summary judgment device because of juries special advantages over judges in this area.

*Brown v. Henderson*, 257 F.3d 246, 251 (2d Cir. 2001).

To defeat a motion for summary judgment, an employment discrimination plaintiff must "do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 252 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). To that effect, conclusory allegations are insufficient to defeat a motion for summary judgment. *Gorzynksi v. JetBlue Airways Corp.*, 596 F.3d 93, 101 (2d Cir. 2010). Moreover, "factual allegations that might otherwise defeat a motion for summary judgment will not be permitted to do so when they are made for the first time in the plaintiff's affidavit opposing summary judgment and that affidavit contradicts her own prior deposition testimony." *Brown*, 257 F.3d at 252 (citing *Bickerstaff v. Vassar College*, 196 F.3d 435, 455 (2d Cir. 1999*); Raskin v. Wyatt Co.*, 125 F.3d 55, 63 (2d Cir. 1997)).

## II. Plaintiff's Sexual Harassment/Hostile Work Environment Claim

Plaintiff's first cause of action alleges that she was subjected to a hostile work environment as the result of a series of inappropriate sexual comments that Mr. Drane directed at her between 2010 and May 2013. To establish a *prima facie* case for a hostile work environment claim under Title VII, Plaintiff must show:

> (1) that her workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the

7

>  conditions of her work environment, and (2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer.

*Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 715 (2d Cir. 1996).

With regard to whether a workplace is "permeated with discriminatory intimidation" that is "sufficiently severe or pervasive to alter the conditions of [a plaintiff's] work environment," the test has both objective and subjective elements. First, the conduct in question must be "severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). Second, the victim must "subjectively perceive the environment to be abusive, and the conduct "must have actually altered the conditions of the victim's employment." *Id.* While these elements provide a general analytical framework for hostile work environment claims, there are no bright-line rules to determine whether an environment is "hostile" or "abusive." *See id.* at 22. Rather, the Court must consider all the surrounding circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 23. While psychological harm to the plaintiff-employee is relevant in determining whether the work environment is "hostile" or "abusive," "no single factor is required." *Id.*

If the work environment can properly be considered "hostile" or "abusive" under this framework, the discriminatory conduct of a plaintiff's co-worker, as opposed to a supervisor, may only be imputed to the employer if the employer "either provided no reasonable avenue for complaint or knew of the harassment but did nothing about it." *Murray v. New York Univ. Coll. of Dentistry*, 57 F.3d 243, 248 (2d Cir. 1995) (quoting *Kotcher v. Rosa & Sullivan Appliance*

*Ctr.*, 957 F.2d 59, 63 (2d Cir. 1992)). To establish vicarious liability under Title VII, an employee is a "supervisor" only if "he or she is empowered by the employer to take tangible employment actions against the victim." *Vance v. Ball State Univ.*, --- U.S. ---, 133 S.Ct. 2434, 2439 (2013). An employee is empowered to take "tangible employment actions" against the victim if the employee has the authority "to effect a 'significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Id.* at 2443 (quoting *Burlington Indus. Inc v. Ellerth*, 524 U.S. 742, 761 (1998)).

Corning argues that Plaintiff has not satisfied either prong of a *prima facie* case of hostile work environment under Title VII. In opposing summary judgment, Plaintiff has set forth deposition testimony documenting the following undisputed instances of allegedly harassing conduct on behalf of her co-worker, Mr. Drane:

(i) In April 2013, Mr. Drane told Plaintiff "you had better stick with me, I can make or break you."

(ii) In April 2013, Mr. Drane, told Plaintiff "I have $600 in my pocket right now, I bet I can make you squeal."

(iii) In April 2013, Mr. Drane told Plaintiff "I only need you Tuesdays and Thursdays."

(iv) In May 2013, Mr. Drane stared at Plaintiff's breasts and commented "I feel like having milk for some reason."

(v) Plaintiff testified that Mr. Drane would answer her phone calls by stating "Did you miss me?"

(vi) When Plaintiff worked on the night shift in 2010 or 2011, Mr. Drane referred to her as a "stupid cunt" on two or three instances.

*See* ECF No. 21, citing ECF No. 18-3 at 52-56.

Accordingly, the record reveals approximately eight undisputed instances of discriminatory conduct by Mr. Drane towards Plaintiff. To be sure, Mr. Drane's conduct is unacceptable, and his comments are inappropriate and distasteful. But whether these eight instances sufficiently demonstrate that Plaintiff's workplace was "permeated with discriminatory intimidation" is a close question. *See, e.g., Spina v. Our Lady of Mercy Med. Ctr.*, No. 97 Civ. 4661 RCC, 2003 WL 22434143 at *3 (S.D.N.Y. Oct. 23, 2003) (finding that six specific instances of harassment over 15 months—including a compliment about the plaintiff's hair and eyes; a comment that she looked good in tight pants, an instance in which the harasser chanted her name; two instances in which he referred to her as a "bitch"; and one instance in which he yelled and pointed his finger at her face—were not pervasive enough to rise to the level of a hostile work environment).

The Court does not need to determine whether Mr. Drane's actions establish a hostile work environment under Title VII, because even if Plaintiff could establish a hostile work environment, liability cannot be imputed to Corning. This is because 1) Mr. Drane was Plaintiff's co-worker, not a supervisor, and 2) Corning took prompt remedial action in response to her complaints. *See Murray*, 57 F.3d at 249.

The Court notes at the outset that while Plaintiff has submitted an affidavit in which she attempts to dispute key facts regarding Mr. Drane's position and authority, the relevant portions of her affidavit either directly contradict her previous sworn deposition testimony and/or consist of conclusory statements of which she has no personal knowledge. Accordingly, the Court cannot consider these portions of Plaintiff's subsequent affidavit for the purposes of this Motion. *See Gorzynski*, 596 F.3d at 101 (holding that conclusory allegations are insufficient to resist a motion for summary judgment); *Brown*, 257 F.3d at 252 (holding that "factual allegations that

might otherwise defeat a motion for summary judgment will not be permitted to do so when they are made for the first time in the plaintiff's affidavit . . . and that affidavit contradicts her own prior deposition testimony").

The undisputed facts demonstrate that Mr. Drane was Plaintiff's coworker, and not a supervisor. Indeed, Plaintiff's own deposition establishes this fact. Plaintiff testified that Mr. Drane did not have the authority to issue disciplinary warnings to her or her coworkers. ECF No. 18-3 at 48. She also testified that she had received several disciplinary warnings throughout her tenure at Corning, none of which were signed by Mr. Drane. *Id.* at 47. Plaintiff testified that she attended disciplinary meetings with supervisors held to discuss those warnings, and Mr. Drane was not present at any of those meetings. *Id.* Plaintiff further testified hat Mr. Drane did not have the authority to suspend Plaintiff or her coworkers without pay, to transfer Plaintiff or her coworkers to different shifts, or to promote Plaintiff or her coworkers. *Id.* at 49-50.

In her affidavit filed in opposition to the present Motion, Plaintiff now claims, for the first time, that "Harold Drane was instrumental in my warnings, meetings, reviews, and reprimands," was instrumental in the termination of another employee, and "regularly practiced subterfuge on me and other employees." ECF No. 21-1 at 2. In addition to directly contradicting Plaintiff's prior sworn deposition testimony, these are conclusory allegations for which Plaintiff proffers no underlying facts, and are therefore insufficient to resist a properly supported summary judgment motion. *See Gorzynski*, 596 F.3d at 101; *Brown*, 257 F.3d at 252. Accordingly, the fact that Mr. Drane was Plaintiff's coworker, not her supervisor, is undisputed. There is simply no evidence properly in the record to indicate that Mr. Drane had the authority "to effect a 'significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant

change in benefits'" as required by the Supreme Court. *See Vance*, 133 S.Ct. at 2443 (quoting *Ellerth*, 524 U.S. at 761).

Because Mr. Drane was Plaintiff's coworker, Corning could only be held liable for Mr. Drane's conduct if it "either provided no reasonable avenue for complaint or knew of the harassment but did nothing about it." *See Murray* 57 F.3d at 248. Regarding a "reasonable avenue for complaint," it is undisputed that Corning's Code of Conduct prohibits discrimination and harassment in the workplace, and it provides five separate reporting avenues to make complaints, including an external complaint line administered by an independent third-party. *See* ECF No. 18-3 at 135-138 (detailing Corning's sexual harassment policies and avenues for complaint). Indeed, Plaintiff admits: 1) that the Code of Conduct was in effect during the relevant time periods; 2) that she received a copy of the Code of Conduct and formal training on the policy in February 2009; and 3) that she paid attention during the Code of Conduct training and understood its terms and provisions. *See* ECF No. 21-1 at 2-3; *see also* ECF No. 18-3 at 19-21. Accordingly, there is no dispute that Corning provided a reasonable avenue for complaint.

Regarding whether Corning "knew of the harassment but did nothing about it," the undisputed facts reveal that Plaintiff filed a sexual harassment complaint with her supervisor, Julie Whitehouse, between July 15 and July 17, 2013. *See* ECF No. 18-3 at 65-66. On July 17, Ms. Whitehouse dialed the complaint hotline number for Plaintiff and handed Plaintiff the phone to make her complaint, which she did. *Id.* at 108. Ms. Whitehouse also typed out a written statement that Plaintiff dictated. *Id.* On that same day, Plaintiff's Code of Conduct complaint was forwarded to Kevin Konopski, human resources manager for Corning's Sullivan Park facility. Mr. Konopski began his investigation by interviewing Plaintiff on July 22, 2013, with her Union representatives present. *Id.* at 109. Plaintiff then provided Mr. Konopski with the

names of witnesses, and he interviewed 13 witnesses and determined that Mr. Drane used inappropriate language toward Plaintiff in the workplace. *Id.* On July 31, 2013, Mr. Konopski met with Mr. Drane and his Union representatives and, after giving Mr. Drane an opportunity to respond to the allegations, notified him that his employment with Corning was being terminated. In lieu of immediate termination, Mr. Konopski granted the Union's request that Mr. Drane be placed on unpaid leave from July 31, 2013 through January 31, 2014, to bridge him to a retirement date of February 1, 2014. At the end of the July 31, 2014 meeting, Mr. Drane was required to turn in his facility keys and his employee badge, and security escorted him off the premises, thus ending his active employment. *Id.*

These facts amply demonstrate that Corning took prompt remedial action in response to Plaintiff's complaint. Crediting Plaintiff's allegation that she filed her Code of Conduct Complaint with her supervisor on July 15, 2013 (as opposed to on July 17, 2013), Corning immediately initiated an investigation, interviewed 13 witnesses, determined that there was sufficient merit to Plaintiff's allegations, and effectively terminated Mr. Drane's employment all within a period of 16 days.

Plaintiff does not genuinely dispute any of these facts, but rather offers conclusory speculation pertaining to the "ineffective enforcement" of the Code of Conduct, Mr. Konopski's alleged bias, and the alleged inadequacy of the investigation—matters of which she has no personal knowledge and for which she provides no underlying facts. *See, e.g.*, ECF No. 21-1 at 3-4. Importantly, Plaintiff does not deny that Corning terminated Mr. Drane's employment on July 31, 2013, thus rendering the specifics of the underlying investigation moot. In contrast, Corning has provided a July 31, 2013 memorandum of understanding prepared by Mr. Konopski and signed by both Mr. Drane and Mr. Konopski detailing that "as a result of investigating a

Code of Conduct complaint, the findings presented evidence for termination of Harold [Drane]." *See* ECF No. 18-3 at 146. In light of this undisputed evidence, there can be no doubt that Corning both had a relevant Code of Conduct in place and took prompt remedial action in accordance with the Code of Conduct in response to Plaintiff's complaint. As a result, there is no basis to impute any potential liability for Mr. Drane's conduct to Corning. *See Murray,* 57 F.3d at 248.

Even assuming *arguendo* that the totality of the circumstances could support a finding that Plaintiff's work environment was permeated with discriminatory intimidation to rise to the level of a hostile work environment under Title VII, liability cannot be imputed to Corning based on the fact that Mr. Drane was Plaintiff's coworker, not her supervisor; and because Corning provided several avenues for complaint and conducted a prompt investigation, which culminated in the termination of Mr. Drane's employment approximately two weeks after Plaintiff's complaint to Corning. Accordingly, Plaintiff has failed to establish a *prima facie* case of hostile work environment under Title VII, and Corning's summary judgment motion on that cause of action is granted.

### III. Plaintiff's Retaliation Claim

Plaintiff's second cause of action alleges that Corning retaliated against her when she returned to work in October 2013 by permitting Mr. Drane to return to and linger around the workplace premises after his employment was effectively terminated. *See* ECF No. 18-3 at 93-95. To establish a *prima facie* case of retaliation under Title VII, Plaintiff must show that: "(1) she was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action." *Lore v. City of Syracuse*, 670 F.3d 127, 157 (2d Cir.

2012). Regarding causation, "a plaintiff making a retaliation claim under § 2000e-3(a) must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer." *Univ. of Texas Southwestern Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2534 (2013).

Corning does not dispute that Plaintiff's Code of Conduct complaint constitutes protected activity, nor does it dispute that it was aware of that complaint. Accordingly, the question is whether Plaintiff suffered a materially adverse action and, if so, whether there was a causal connection between the protected activity and that adverse action. *See Lore*, 670 F.3d at 157; *Nassar*, 133 S. Ct. at 2534.

An adverse employment action is one that might "dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe R.R. Co. v. White*, 548 U.S. 53, 57 (2006). But actions that are "trivial harms"—*i.e.,* "those petty slights or minor annoyances that often take place at work and that all employees experience"—are not materially adverse. *Burlington,* 548 U.S. at 68; *accord Hicks,* 593 F.3d at 165. As the Supreme Court reminded us in *Burlington,* Title VII does not set forth "a general civility code for the American workplace." 548 U.S. at 68 (quotation omitted).

Material adversity must be determined objectively, based on the reactions of a reasonable employee. *Id.* at 69–70. "Context matters," as some actions may take on more or less significance depending on the context. *Id.* at 69. Alleged acts of retaliation must be evaluated both separately and in the aggregate, as even trivial acts may take on greater significance when they are viewed as part of a larger course of conduct. *Hicks,* 593 F.3d at 165.

In this case, Corning did not terminate Plaintiff's employment. ECF No. 18-3 at 10. As of January 23, 2015, the date Plaintiff's deposition was conducted, she had been on a medical leave of absence. *Id.* at 9. Similarly, Plaintiff does not allege that she was disciplined after filing

her Code of Conduct Complaint. *Id.* at 96.  Instead, the sole argument Plaintiff provides to show an adverse action is her conclusory allegation that Corning allowed Mr. Drane to "walk around" Corning's premises when she returned to work in October 2013, which was after Mr. Drane's employment was terminated. *Id.* at 93-94.  But Plaintiff admits that she never actually saw Mr. Drane. *Id.* at 94.  And even if she did, Plaintiff has not alleged – much less produced any evidence in admissible form – that Corning intentionally allowed Mr. Drane to enter the premises.  Despite having no evidence to support her conclusory allegation that Mr. Drane was on the Corning property on one instance after he was terminated, Corning nonetheless offered to provide a Corning security officer to escort Plaintiff to and from her vehicle any time she felt fearful; to not assign Plaintiff any work outside the facility so she would feel more comfortable; and to provide a referral to Corning's Employee Assistance Program. *Id.* at 86.  When asked what else Corning should have done for her, Plaintiff replied "I don't know." *Id.* at 94-95.

In light of these undisputed facts, the Court finds that there is absolutely no evidence to suggest that Plaintiff suffered an adverse employment action. Corning, in fact, offered to assist Plaintiff in several ways to alleviate her perceived fear of Mr. Drane's presence.  The fact that Plaintiff did not suffer any adverse employment action is fatal to her claim.  But further, since she did not suffer any adverse employment action, she similarly cannot establish the "but-for causation" requirement of a Title VII retaliation claim. *See Nassar*, 133 S. Ct. at 2534-35.  As such, Corning is also entitled to summary judgment on Plaintiff's cause of action alleging retaliation under Title VII.

## **CONCLUSION**

For all of these reasons, Corning's Motion for Summary Judgment (ECF No. 18) is GRANTED, and Plaintiff's Complaint is DISMISSED WITH PREJUDICE. The Clerk of Court is directed to enter judgment and to close this case.

IT IS SO ORDERED.

Dated:   September 26, 2016
         Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court